UNITED MINE WORKERS OF AMERICA UNION HOSPITAL, a Not for Profit Corporation, Plaintiff-Appellee, v. UNITED MINE WORKERS OF AMERICA DISTRICT NO. 50, et al., Defendants-Appellants.

(No. 70-24; ▮▮▮▮▮▮▮▮▮▮)

Fifth District—October 12, 1971.

*Rehearing denied November 12, 1971.*

J. C. Mitchell and W. A. Armstrong, of Marion, for appellants.

Robert S. Hill, of Benton, and Don R. Lucas, of West Frankfort, for appellee.

Mr. PRESIDING JUSTICE EBERSPACHER delivered the opinion of the court:

This action was first brought for rule to show cause why the defendants, the appellants herein, should not be held in contempt of Court for violation of a temporary restraining order filed November 1, 1969. The temporary restraining order was issued as a result of a verified complaint of the plaintiffs, the appellees herein, for a temporary restraining order and permanent injunction enjoining the defendants from engaging in a strike and picketing at the plaintiff's hospital in West Frankfort, Illinois. Upon hearing on rule to show cause, the circuit court of Franklin County found the defendants in civil contempt of Court and levied fines against them. This appeal is taken from the Contempt Order of the Court.

The plaintiff herein is an Illinois not-for-profit corporation operating a hospital in West Frankfort, Illinois. Hereinafter the plaintiff-appellee shall be referred to as the Hospital.

The defendants are the United Mine Workers of America District No. 50, Local Union No. 12640 of United Mine Workers of America No. 50 and individuals Art Hodgson, Lee Arnold, Jennette Brown, Georgina Eldridge, Cordelia Owens, Bob Kemp and Frank Crise.

On October 31, 1969, defendants, United Mine Workers of America, District No. 50 and Local Union No. 12640 of the Union were parties to a collective bargaining agreement with the Hospital. Defendant Frank Crise was the regional Director of the Union and Defendant Bob Kemp was a special representative of the Union. The remaining individual defendants were officers of the local and employees of the Hospital.

The collective bargaining agreement in effect on October 31, 1969, expired at midnight on that date. The defendants elected not to work without a contract and the 11:00 P.M. shift reported to work and worked through 7:00 A.M. on November 1. Plaintiff made arrangements to close the hospital. All ambulatory patients were transferred to other hospitals on the evening of October 31, and bed patients were removed by ambulance on November 1.

At 12:02 A.M. November 1, 1969, defendants established pickets on the public sidewalks adjacent to the hospital. Some of the pickets were carrying signs which stated "on strike" or "unfair to employees" or "no contract, no work", or reflected defendants' attitude that plaintiffs were unfair or that defendants wanted decent wages. There is no contention that the pickets engaged in violence, threats or intimidation, and the complaint failed to allege such acts other than by slight inference and

conclusions of the pleader of the purpose of the pickets and that their acts were unlawful and illegal.

On the morning of November 1, 1969, before 5:33 A.M., plaintiff filed a complaint for temporary restraining order, temporary injunction and permanent injunction restraining defendants from engaging in a strike and picketing the hospital. At 5:33 A.M. a temporary restraining order was signed and issued by the Circuit Court Judge.

The temporary restraining order was served on defendants at 7:00 A.M. in front of the hospital. Picketing then ceased and recommenced at about 1:00 P.M. continuing through 10:30 A.M., November 2, 1969.

On November 3, 1969, upon plaintiff's petition the court issued a rule to show cause. After a hearing on the rule the court found defendants to have violated the temporary restraining order and held them in contempt of court for having established picket lines and pickets at the hospital from the time of service of the order until 10:30 A.M., November 2, 1969. Fines were levied on defendants.

■■ The thrust of defendants' argument on appeal is that the court was without jurisdiction to issue the temporary restraining order and therefore its violation is not grounds for contempt. We agree.

Ill. Rev. Stat. 1969, ch. 48, par. 2a, (commonly known as the Anti-Injunction Act) provides:

"No restraining order or injunction shall be granted by any Court of this state, or by a Judge or Judges thereof in any case involving or growing out of a dispute concerning the terms or conditions of employment, enjoining or restraining any person or persons, either singly or in concert, from terminating any relation of employment or from ceasing to perform any work or labor, or from peaceably and without threats or intimidation recommending, advising, or persuading others so to do; or from peaceably and without threats or intimidation being upon any public street, or thoroughfare or highway for the purpose of obtaining or communicating information, or to peaceably and without threats or intimidation persuade any person or persons to work or to abstain from working, or to employ or to peaceably and without threats or intimidation cease to employ any party to a labor dispute, or to recommend, advise or persuade others so to do."

■■ The Anti-Injunction Act was attacked in *Fenske Bros. v. Upholsterer's International Union* (1935), 358 Ill. 239, 193 N.E. 112 on the ground that the law deprived the circuit court of its jurisdiction granted by the Constitution and that the legislature was in essence amending the Constitution. Fenske held that such was not the case. It was there held that "So far as the statute is concerned, circuit courts have the same jurisdiction in labor disputes they have always had, for it cannot be said that

they ever had the power, by the Constitution or otherwise to prevent or penalize the performance of lawful acts concerning which no cause of action existed * * *. The act does not abridge or invade the jurisdiction of the Courts, and consequently does not contravene, the constitutional provisions relating thereto." That language is equally applicable to the provision of section 9, article 6, of the constitution of 1970 which provides:

"circuit courts shall have original jurisdiction of all justiciable matters * * *."

■■ It is clear in this State that:

"A party may refuse to obey an order where the Court had no authority to make it and where it is absolutely void for want of power in the Court, but he cannot refuse to obey it on the ground that it was improvidently or erroneously made." *Christian Hospital v The The People,* 223 Ill. 244, 250, 79 N.E. 72 (1906).

The Supreme Court stated in *Faris v. Faris,* 35 Ill.2d 305, 220 N.E.2d 210, 212 (1966) that:

"One is justified in refusing to comply with a Court order only if such order is utterly void, but it is no defense in a contempt proceeding to show the order was merely erroneous. (Cummings-Landau Laundry Machinery Co. v. Koplin, 386 Ill. 368, 54 N.E.2d 462; 12 I.L.P., Contempt, § 31.) If the Court had jurisdiction of the subject matter and of the parties to the proceeding, then its order must be obeyed until such time as it is set aside by the issuing or reviewing court. (People ex rel. Tizel v. Hill, 344 Ill. 246, 176 N.E. 360.) Jurisdiction of the subject matter means the power of that particular court to hear the type of case that is then before it. (Baker v. Brown, 372 Ill. 336, 23 N.E.2d 710; Rabbit v. Frank C. Weber & Co., 297 Ill. 491, 130 N.E. 787.)"

■■ The Anti-Injunction Act is clear and no exception exists where hospitals are the employers (*Peters v. South Chicago Community Hospital* (1969)[1], 44 Ill.2d 22, 253 N.E.2d 375.) There our Supreme Court held that the public policy of this State does not prohibit employees of a hospital from striking and members of a hospital union from peacefully picketing a hospital. Thus defendants were engaging in a lawful act which could not be restrained. But more importantly, the courts of this state under the Anti-Injunction Act have no *power* to restrain these lawful activities.

The factual situations distinguish this case from *Board of Education v. Kankakee Federation of Teachers Local 886,* 46 Ill.2d 439, 264 N.E.2d 18,

---

[1] At the date of this order the Supreme Court opinion in *Peters v. South Chicago Community Hospital* reversing, 107 Ill.App.2d 460, had not been filed.

in which employees of a school district were striking and the restraining order issued restrained an unlawful act. In *County of Peoria v. Benedict,* 47 Ill.2d 172, 265 N.E.2d 141, the pleadings and evidence showed that during the period of November 30 to December 6 acts of violence by striking employees and pickets actually occurred. Here, no violence or other illegal acts were charged or proved and none appear of record. As stated in *Fenske Brothers v. Upholsterer's Union,* 358 Ill. at page 257, "Whenever the doing of an act is unlawful it gives rise to a cause of action, but it is *inconceivable that any cause of action,* legal or equitable, as contemplated by the constitutional provision, *exists to restrain the performance of a lawful act".* Emphasis supplied.

■■ In *County of Peoria, supra,* the Supreme Court held that an injunction, while in force cannot be disregarded citing numerous United States and Illinois Supreme Court cases all of which were based on different circumstances than this case. In *Walker v. City of Birmingham,* 388 U.S. 307, 87 S.Ct. 1824, both the majority and dissenting opinion recognize an exception to the rule relating to the penalty of contempt for the violation of a preliminary injunction or restraining order. Such exception is that where an injunction or restraining order is transparently upon its face invalid, it may be ignored without suffering the penalty of contempt. (87 Sup. Ct. 1829, 1838, 1840, 1845 and 1846.) The same point is made in *United States v. United Mine Workers of America,* 330 U.S. 258, 67 Sup. Ct. 677 at 695-696. Furthermore, the U.S. Supreme Court decision, upon which all the cases basically rely, *Howat v. State of Kansas,* 258 U.S. 181, at 189-190, 42 S.Ct. at 280 agrees, stating, "* * * an injunction duly issuing out of a court of general jurisdiction with equity powers *upon pleadings properly invoking its action,* * * * must be obeyed * * * however erroneous * * *." In *Board of Education v. Kankakee, etc., supra.,* our Supreme Court recognized this exception, at 46 Ill.2d 45, 264 N.E.2d 22, when it said, "The simple and logical rationale of these decisions is that where a court of equity issues an injunction, with jurisdiction of the subject matter and the persons *and upon pleadings properly invoking its action,* the injunction must be obeyed * * *." Emphasis supplied. The exception was likewise recognized in County of Peoria, *supra,* by quotation from the Kankakee case. Here there were *no pleadings properly invoking the action* of a court of equity.

Here, too, defendants, contending the temporary restraining order was constitutionally transparently invalid upon its face, reason they were then privileged to disregard it, and if charged with violation, to raise such constitutional defense. In support of this position they cite *Carroll v. President and Commissioners of Princess Ann,* 393 U.S. 175, 89 S.Ct. 347, where it was held that an *ex parte* temporary restraining order issued

without notice, where no showing is made that it is impossible to serve or notify the opposing party and to give them an opportunity to participate, is in clear violation of those basic freedoms guaranteed by the first amendment. Here, no notice of a hearing for temporary restraining order was given to defendants, and there was a prior restraint within the rule of Carroll. In *Board of Education v. Kankakee, supra,* notice was unnecessary because upon the face of the complaint, the teachers were engaged in an unlawful act. In *County of Peoria, supra,* "there was full compliance with the procedure safeguard" in that even though the November 29 hearing was *ex parte,* it was *ex parte* because the defendants chose not to appear, and not because of arbitrary action by the court or the plaintiffs.

In the case of *Fortenbury v. Superior Court* (1940), 16 Cal. 405, 106 P.2d 411 the California Supreme Court discussed the meaning of jurisdiction. In that case the petitioner had been held in contempt for violating temporary restraining order prohibiting him from picketing in support of a secondary boycott. In that jurisdiction such conduct was lawful and the petitioner claimed the Court lacked jurisdiction to restrain him. At page 412 the Court stated:

"The term jurisdiction originally included only the right to hear and determine concerning the subject matter in a particular case. But the modern tendency has been to broaden that meaning, * * *. A Court may have jurisdiction of the cause of action and of the parties, but it may lack the authority or power to act in the case except in a particular way. Under such circumstances, it is now generally held that the Court had no jurisdiction."

At page 413, the Court stated:

"More recently, this Court again recognized the confusion which exists in determining whether, in a given situation, there was a lack of jurisdiction or mere error in the exercise of jurisdiction * * * when a statute authorizes prescribed procedure, and the Court acts contrary to the authority thus conferred, it has exceeded its jurisdiction * * *."

The restraining order issued in this case restrains defendants from "engaging in or authorizing picketing or a strike of the hospital premises involved herein". Under the Statute this conduct cannot be restrained and the trial court had no power to enjoin such an act, the restraining order was void and the failure to obey such an order is not grounds for contempt.

Judgment reversed.

CREBS and MORAN, JJ., concur.