**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2025 IL App (3d) 240311-U

Order filed May 23, 2025

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2025

| | | |
|---|---|---|
| IAN D. REECE, | ) | Appeal from the Circuit Court |
| | ) | of the 12th Judicial Circuit, |
| Plaintiff-Appellant, | ) | Will County, Illinois. |
| | ) | |
| v. | ) | |
| | ) | |
| KWAME RAOUL, in his Official | ) | Appeal No. 3-24-0311 |
| Capacity as Attorney General of the State | ) | Circuit No. 23-CH-242 |
| of Illinois; and BRENDAN F. KELLY, in | ) | |
| his Official Capacity as Director of the | ) | |
| Illinois State Police, | ) | The Honorable |
| | ) | John C. Anderson, |
| Defendants-Appellees. | ) | Judge, Presiding. |

JUSTICE PETERSON delivered the judgment of the court.
Justices Davenport and Bertani concurred in the judgment.

**ORDER**

¶ 1   *Held*:   The trial court correctly determined that plaintiff was not legally or equitably entitled to possess or register his weapon and attachments in Illinois, properly granted defendants' motion for summary judgment on that basis, and properly denied plaintiff's cross-motion for summary judgment. Trial court judgment affirmed.

¶ 2   Plaintiff, Ian D. Reece, filed a civil lawsuit against defendants, the Illinois Attorney

General and the Director of the Illinois State Police, seeking declaratory and injunctive relief

relating to the Illinois law that restricted the acquisition and possession of assault weapons and assault weapon attachments and that prevented plaintiff from possessing and registering in Illinois an assault weapon and attachments that he had purchased after the law had gone into effect but during a period when the law had been preliminarily enjoined by the federal district court. The preliminary injunction was stayed shortly thereafter, and ultimately vacated, by the federal appeals court. The parties filed cross-motions for summary judgment on plaintiff's complaint. The trial court granted defendants' motion for summary judgment and denied plaintiff's. Plaintiff appeals. We affirm the trial court's judgment.

¶ 3                                    I. BACKGROUND

¶ 4            On January 10, 2023, the Illinois legislature enacted the Protect Illinois Communities Act (Act), which amended the Criminal Code of 2012 to restrict access to assault weapons, assault weapon attachments, and large capacity magazines. See Pub. Act 102-1116, § 25 (eff. Jan. 10, 2023) (adding 720 ILCS 5/24-1.9, 24-1.10); *Caulkins v. Pritzker*, 2023 IL 129453, ¶¶ 1, 7, *cert. denied*, 601 U.S. ___, 144 S. Ct. 567 (2024). Among other things, the Act prohibited the manufacture, delivery, sale, import, or purchase of assault weapons or assault weapon attachments (acquisition restrictions). 720 ILCS 5/24-1.9(b) (West 2022); *Caulkins*, 2023 IL 129453, ¶ 7. The acquisition restrictions took effect immediately on January 10, 2023. 720 ILCS 5/24-1.9(b) (West 2022); *Caulkins*, 2023 IL 129453, ¶ 7. The Act also prohibited the possession of assault weapons and assault weapon attachments (possession restrictions). 720 ILCS 5/24-1.9(c) (West 2022); *Caulkins*, 2023 IL 129453, ¶ 7. The possession restrictions, however, did not go into effect until January 1, 2024. 720 ILCS 5/24-1.9(c) (West 2022); *Caulkins*, 2023 IL 129453, ¶ 7. The Act provided criminal penalties for a person's failure to comply with the acquisition or possession restrictions. See 720 ILCS 5/24-1(a)(11), (15), (16), (b) (West 2022).

2

¶ 5         Along with setting forth the restrictions, the Act also provided some exemptions to those restrictions. For example, the restrictions on purchase and possession did not apply to peace officers; active and retired law enforcement officers; law enforcement agencies; prison officials; members of the military, military reserves, national guard; and certain private security contractors. 720 ILCS 5/24-1.9(e)(1)-(7) (West 2022); *Caulkins*, 2023 IL 129453, ¶¶ 1, 10-11. In addition, the possession restrictions contained an exemption or "grandfather clause" for individuals who already owned assault weapons and/or assault weapon attachments when the Act was passed. 720 ILCS 5/24-1.9(d) (West 2022); *Caulkins*, 2023 IL 129453, ¶¶ 1, 8. Such individuals were permitted to keep those items if they registered the items and provided an endorsement affidavit to the Illinois State Police before January 1, 2024, attesting that they had possessed the items before the Act's January 10, 2023, enactment date. 720 ILCS 5/24-1.9(d)(2) (West 2022); *Caulkins*, 2023 IL 129453, ¶ 8.

¶ 6         Shortly after the Act went into effect, several lawsuits were filed contending that the Act violated the second amendment of the United States Constitution. See *Bevis v. City of Naperville, Illinois*, 85 F.4th 1175, 1184 (7th Cir. 2023). Some of the lawsuits were consolidated in the federal district court of the Southern District of Illinois under the case name, *Barnett v. Raoul*. See *Barnett v. Raoul*, 671 F. Supp. 3d 928, 934 (S.D. Ill. 2023), *vacated sub nom.*, *Bevis*, 85 F.4th at 1203, *cert. denied sub nom.*, *Harrel v. Raoul*, 603 U.S. __, 144 S. Ct. 2491 (2024). On April 28, 2023, after the acquisition restrictions had gone into effect but before the possession restrictions had done so, the federal district court entered a preliminary injunction preventing enforcement of the relevant provisions of the Act, finding that the *Barnett* plaintiffs had shown a reasonable likelihood of success on the merits of their claim. *Id.* at 948. The district court cautioned, however, that its ruling was not a final resolution of the merits. *Id.* The State

defendants in *Barnett* filed an appeal from the preliminary injunction soon thereafter. *Barnett v. Raoul*, No. 23-1825 (7th Cir. 2023).

¶ 7         Over the next few days after the *Barnett* injunction was issued, plaintiff—who lived in Will County, Illinois, and held a valid firearm owner's identification (FOID) card—purchased an assault weapon and some attachments (collectively referred to hereinafter at times as the assault weapons or the weapons) that were covered by the Act.

¶ 8         On May 4, 2023—six days after the *Barnett* injunction was entered—the federal court of appeals for the Seventh Circuit stayed the injunction. *Id.* The federal appeals court later extended the stay until it could resolve the State's appeal. *Id.* On November 3, 2023, the federal appeals court vacated the preliminary injunction, finding that plaintiffs had failed to establish they had a strong likelihood of success in the pending litigation. *Bevis*, 85 F.4th at 1188, 1203. In making that finding, however, the federal appeals court pointed out—similar to the federal district court—that its ruling was only a preliminary look at the subject. *Id.* at 1197. At some point thereafter, plaintiff began storing the assault weapons that he had purchased in Indiana.

¶ 9         In December 2023, a few days before the possession restrictions took effect, plaintiff filed the instant lawsuit in the state trial court in Will County, Illinois, seeking to have the trial court declare that the prohibition on possessing assault weapons and attachments that were purchased during the period when the *Barnett* injunction was in effect and the concurrent inability to lawfully register those items was improper, unlawful, and unenforceable. Plaintiff also asked the trial court to permanently enjoin defendants from enforcing the prohibition on possessing and registering assault weapons and attachments that were purchased during the injunction period. Plaintiff noted in his complaint and during the trial court proceedings, however, that he was not challenging the constitutionality of the Act.

4

¶ 10        A few months later, in March 2024, the parties filed cross-motions for summary judgment on plaintiff's complaint. Plaintiff argued in his motion for summary judgment that: (1) the *Barnett* injunction allowed him to continue to possess the assault weapons at issue, even though the injunction was later stayed and ultimately vacated, because he had purchased the weapons when the injunction was in effect and when it was legal for him to do so; (2) he should be permitted to continue to possess the assault weapons that he had purchased and be allowed to register those weapons because he had purchased the weapons in reliance on the *Barnett* injunction, a valid court order; and (3) enforcing the Act against him would be inequitable under the circumstances and would force him to give up his property (the weapons).

¶ 11        Defendants disagreed with those assertions and argued in their cross-motion for summary judgment that the *Barnett* injunction did not allow plaintiff to continue to possess the assault weapons in Illinois that he had purchased because the injunction was later vacated and the Act had come back into effect. According to defendants, plaintiff's arguments to the contrary were inconsistent with the established case law on the vacatur of federal injunctions, the plain language of the Act's provisions, and an Illinois Supreme Court decision interpreting the Act. Defendants also argued that plaintiff's reliance/estoppel argument did not, and could not apply in this case to allow plaintiff to continue to possess the assault weapons in Illinois or to register those weapons; that plaintiff was not being forced to give up his property and could keep the weapons in another state; and that the trial court should not ignore the plain language of the Act based upon the equity considerations that plaintiff had raised.

¶ 12        In April 2024, a hearing was held on the parties' cross-motions for summary judgment. After the oral arguments of the attorneys, the trial court took the motions under advisement. The trial court later issued a written ruling granting defendants' motion for summary judgment and

denying plaintiff's. As the bases for its ruling, the trial court stated in the written order that it was adopting the arguments that defendants had made in the motion proceedings. Plaintiff appealed.

¶ 13                                                    II. ANALYSIS

¶ 14          On appeal, plaintiff argues that the trial court erred in granting defendants' motion for summary judgment, and denying his cross-motion, on his complaint for declaratory and injunctive relief relating to the enforcement of the Act. In support of that argument, plaintiff contends that he is legally and/or equitably entitled to possess and register the assault weapons at issue, regardless of the restrictions contained in the Act, because: (1) he purchased the weapons when it was legal for him to do so since the *Barnett* injunction had gone into effect and had preliminarily enjoined the enforcement of the Act; (2) the validity of his purchase was not negated by the later stay and ultimate vacatur of the *Barnett* injunction; (3) he relied upon the *Barnett* injunction as a valid court order in making his purchase; (4) he reasonably believed that the State would allow him to register the weapons in compliance with the Act since he had purchased the weapons at a time when it was legal for him to do so; (5) refusing to allow him to register the weapons would force him to give up the weapons (his property) or to store them out of state or would subject him to criminal prosecution; and (6) it would be unfair and inequitable under the circumstances to prohibit him from registering the weapons so that he could comply with the Act. For those reasons, plaintiff asserts that the Act's possession restrictions are unlawful and unenforceable as to the assault weapons at issue, that defendants should be permanently enjoined from enforcing those restrictions against him, and that defendants should be required to allow him to register the weapons. Plaintiff asks, therefore, that we reverse the trial court's grant of defendants' motion for summary judgment, reverse the trial court's denial of

plaintiff's cross-motion for summary judgment, and grant plaintiff the declaratory and injunctive relief that he seeks.

¶ 15 Defendants argue that the trial court's grant of defendants' motion for summary judgment and denial of plaintiff's cross-motion was proper and should be upheld. Defendants assert that the trial court correctly determined that plaintiff was not legally and/or equitably entitled to possess and register the assault weapons at issue and properly granted summary judgment for defendants on that basis. In support of that assertion, defendants argue that: (1) the plain language of the Act prohibits plaintiff from possessing the weapons because he purchased the weapons after the Act's January 10, 2023, enactment date; (2) plaintiff must comply with the Act's restrictions because there is no source of law that prohibits the Act's enforcement going forward; (3) in the absence of any constitutional infirmity with the Act, which plaintiff specifically states that he is not arguing, this court has no basis to declare that the Act cannot be enforced; (4) the *Barnett* injunction does not prohibit enforcement of the Act because the injunction was stayed shortly after plaintiff purchased the weapons, and was later vacated; (5) contrary to plaintiff's assertion, defendants complied with the injunction while it was in effect; (6) plaintiff's purported reliance on the injunction does not provide a basis for prohibiting enforcement of the Act because any such reliance was unreasonable since the injunction was only temporary and since plaintiff had chosen to purchase the weapons despite the obvious uncertainty and because equity concerns cannot be used to invalidate a statute that was duly passed by the legislature or to depart from the plain language of that statute; (7) enforcing the Act does not deprive plaintiff of his property because plaintiff can store the weapons out of state and any difficulties in doing so are the result of plaintiff's decision to purchase the weapons during a period of uncertainty; and (8) the Act represents a policy choice by the legislature, and,

7

to the extent that plaintiff objects to that choice, his remedy is a legislative one. For all of the reasons stated, therefore, defendants ask that we affirm the trial court's judgment, granting defendants' motion for summary judgment and denying plaintiff's.

¶ 16    The purpose of summary judgment is not to try a question of fact, but to determine if one exists. *Adams v. Northern Illinois Gas Co.*, 211 Ill. 2d 32, 42-43 (2004). Summary judgment should be granted only where the pleadings, depositions, admissions on file, and affidavits, when viewed in the light most favorable to the nonmoving party, show that there is no genuine issue as to any material fact and that the moving party is clearly entitled to a judgment as a matter of law. See 735 ILCS 5/2-1005(c) (West 2022); *Adams*, 211 Ill. 2d at 43. Summary judgment should not be granted if the material facts are in dispute or if the material facts are not in dispute but reasonable persons might draw different inferences from the undisputed facts. *Adams*, 211 Ill. 2d at 43. Although summary judgment is to be encouraged as an expeditious manner of disposing of a lawsuit, it is a drastic measure and should be allowed only where the right of the moving party is clear and free from doubt. *Id.* A trial court's grant of summary judgment is subject to *de novo* review on appeal. *Adams*, 211 Ill. 2d at 43. When *de novo* review applies, the appellate court performs the same analysis that the trial court would perform. *Direct Auto Insurance Co. v. Beltran*, 2013 IL App (1st) 121128, ¶ 43. A trial court's grant of summary judgment may be affirmed on any basis supported by the record. *Home Insurance Co. v. Cincinnati Insurance Co.*, 213 Ill. 2d 307, 315 (2004).

¶ 17    In the present case, after reviewing the relevant portions of the trial court record and considering the applicable law and the parties' arguments, we conclude that the trial court correctly determined that plaintiff was not legally or equitably entitled to possess and register in Illinois the assault weapons and attachments at issue. In reaching that conclusion, we start first

and foremost with the Act itself. The Act's possession restriction and the grandfather clause exemption thereto are clear and unambiguous and allow for the possession and registration of only those assault weapons and attachments that were possessed by the individual prior to when the Act went into effect on January 10, 2023, and only if that individual had submitted the required endorsement affidavit within the time provided. See 720 ILCS 5/24-1.9(c), (d)(2) (West 2022); *Caulkins*, 2023 IL 129453, ¶ 8. Plaintiff in the instant case did not possess the assault weapons at issue prior to the Act's January 10, 2023, enactment date and is, therefore, prohibited under the plain language of the Act from possessing or registering the weapons. See 720 ILCS 5/24-1.9(d)(2) (West 2022); *Caulkins*, 2023 IL 129453, ¶ 8. Because the Act is clear and unambiguous, it must be applied as written. See *Gaffney v. Board of Trustees of Orland Fire Protection District*, 2012 IL 110012, ¶ 56. We cannot read exceptions, limitations, or conditions into the Act that the legislature did not express (see *id.*), including one that would allow plaintiff to possess and register the assault weapons that he had lawfully purchased after the Act had gone into effect but during a period when the Act had been preliminarily enjoined.

¶ 18 Next, we consider the legal and equitable grounds that plaintiff cites in support of his position. Although plaintiff maintains that he is legally entitled to possess and register the weapons because he lawfully purchased the weapons during a period when the Act had been preliminarily enjoined by the federal district court, we are not persuaded by that argument. We have no reason to dispute that the *Barnett* injunction was a valid court order and we recognize the well-established legal principle that plaintiff cites—that a valid court order must be obeyed until it is set aside by the issuing or reviewing court (see *Smith v. Vanguard Group, Inc.*, 2019 IL 123264, ¶ 10; *Faris v. Faris*, 35 Ill. 2d 305, 309 (1966)). However, we fail to see how the *Barnett* injunction would allow plaintiff to possess and register the weapons at issue, despite the

9

restrictions contained in the Act. There is no dispute in this case that the *Barnett* injunction was stayed less than a week after it was issued and that it was ultimately vacated by the federal appeals court. Thus, consistent with the legal principle that plaintiff cites, the *Barnett* injunction provides no legal basis upon which to currently prohibit defendants from enforcing the Act's possession restrictions to the assault weapons that plaintiff had purchased because the *Barnett* injunction had been set aside. See *Smith*, 2019 IL 123264, ¶ 10; *Faris*, 35 Ill. 2d at 309; see also *Alabama Power Co. v. U.S. E.P.A.*, 40 F.3d 450, 456 (D.C. Cir. 1994) (recognizing in the context of a federal case that the court's vacatur of a federal regulation meant that the regulation had been annulled; canceled or rescinded; declared, made, or rendered void; defeated; deprived of force; made to have no authority or validity; or set aside); *Benjamin v. Jacobson*, 172 F.3d 144, 159 (2d Cir. 1999) (indicating that to vacate an order means to annul the order or to render the order void); *Bryan v. BellSouth Communications, Inc.*, 492 F.3d 231, 241 (4th Cir. 2007) (recognizing that a vacated order generally has no effect). In addition, plaintiff has not argued in this case that the Act is unconstitutional and has not provided any legal basis, other than the application of the *Barnett* injunction, upon which to find that the Act's possession restrictions do not apply to the assault weapons at issue. As defendants correctly point out, in the absence of a constitutional infirmity, it is not the role of the courts to declare that a statute may not be enforced. *Dew-Becker v. Wu*, 2020 IL 124472, ¶ 20.

¶ 19    Turning to the equitable grounds that plaintiff cites—reliance/estoppel and deprivation of property—we are not persuaded by plaintiff's arguments as to those grounds and find his arguments on those grounds to be generally without merit. With regard to reliance/estoppel, plaintiff could not have reasonably relied upon the *Barnett* injunction to allow him to permanently possess the assault weapons at issue because the *Barnett* injunction was only

10

preliminary or temporary in nature (see *Chathas v. Local 134 International Brotherhood of Electrical Workers*, 233 F.3d 508, 513 (7th Cir. 2000) (indicating that the purpose of a preliminary injunction is to protect the status quo while the case proceeds and not to adjudicate the merits of the case)). Further, because the plain language of the Act, as noted above, clearly prohibits the possession of assault weapons that an individual had taken possession of after the enactment date of the Act (unless an exemption applied).

¶ 20        Furthermore, even if we had found that plaintiff's reliance upon the *Barnett* injunction was reasonable, we still would not have found that the circumstances in the present case were sufficient to justify applying estoppel against defendants (the State) and estopping defendants from enforcing the Act's restrictions regarding the weapons at issue. It is well settled that courts are reluctant to find that the State is estopped from enforcing its laws and will apply estoppel against the State only in rare and exceptional circumstances when doing so is necessary to prevent fraud and injustice. See *Vestrup v Du Page County Election Comm'n*, 335 Ill. App. 3d 156, 166 (2002); *Halleck v. County of Cook*, 264 Ill. App. 3d 887, 893 (1994). There was no fraud or injustice in the instant case, as plaintiff chose to purchase the weapons, even though the Act had already gone into effect, with nothing more than a preliminary injunction as his legal basis to justify his possession of the weapons. Moreover, the action alleged to be relied upon in this case was undertaken by the federal courts and not that of the defendants.

¶ 21        Finally, as for deprivation of property, although plaintiff asserts that enforcing the Act will force him to give up the weapons, plaintiff has not made any constitutional claims of a deprivation of property and readily acknowledges that he can avoid the consequences of the Act by merely keeping the weapons out of state as he currently does. As defendants correctly note,

any difficulties in doing so are the result of plaintiff choosing to purchase the weapons despite the uncertainty involved.

¶ 22    In sum, because the Act clearly and unambiguously prohibits plaintiff from possessing and registering the weapons at issue in Illinois and because plaintiff has failed to establish any legal or equitable grounds that would allow him to do so despite the Act's restrictions, we conclude that the trial court properly granted defendants' motion for summary judgment on plaintiff's complaint for declaratory and injunctive relief relating to the enforcement of the Act and properly denied plaintiff's cross-motion for summary judgment.

¶ 23                            III. CONCLUSION

¶ 24    For the foregoing reasons, we affirm the judgment of the circuit court of Will County.

¶ 25    Affirmed.